# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JARED ALAN CARTER, a minor, by his mother and next friend, GLENNA CARTER, | ) ) ) ) |
| Plaintiff, | ) ) |
| VS. | ) NO. CV 07-245-PMF ) |
| GRINNELL MUTUAL REINSURANCE COMPANY, | ) ) ) ) |
| Defendant/Counter-Claimant, | ) ) |
| VS. | ) ) |
| TANNER McVAIGH, a minor; REBECCA McVAIGH; DANNY McVAIGH; LINDA GEISE; and JARED ALAN CARTER, a minor, by his Mother and Next Friend, Glenna Carter; | ) ) ) ) ) ) |
| Counter-Defendants. | ) |

## MEMORANDUM AND ORDER

Before the Court are cross motions for summary judgment (Doc. Nos. 41, 42). Glenna Carter filed this declaratory judgment action on behalf of her son, Jared. Defendant is proceeding on a counterclaim, also for declaratory judgment (Doc. No. 11). The Court has diversity jurisdiction to determine and declare the rights of the parties.

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The material facts are not in dispute. Early in February, 2005, Rebecca McVaigh bought a paint ball gun for her son, Tanner McVaigh. At the time, Tanner was ten years old and was living with Rebecca, his step-father Danny, and his siblings at 358 North West Street in West Salem, Illinois. The McVaigh residence was a mobile home, owned by Rebecca. The home was parked on

a large parcel of land owned by Linda Giese. Ms. Giese is Rebecca's mother and Tanner's grandmother. Ms. Giese lived with her companion, Mr. Aldridge, at 354 North West Street – in a mobile home she owned which was parked on the same parcel of land. The Giese home is located approximately 100 yards from the McVaigh home.

Rebecca McVaigh and her husband gave Tanner instructions regarding the safety features and proper use of his paint ball gun. On one occasion, Ms. Giese's companion reprimanded Tanner for shooting paint balls at an improper target.

On February 19, 2005, a group of boys accepted Tanner's invitation to play at his house. The boys took turns shooting the paint ball gun but experienced some technical problems. Tanner took the gun to his step-father, who made the necessary repairs. When play resumed, Jared Carter was accidently shot and injured. Tanner reported the injury to his mother.

At the time of Jared Carter's injury, the McVaighs were not insured. Ms. Giese was insured through a mutual homeowner's policy issued by Rockford Mutual Insurance Company. The sole issue in this case is whether Tanner McVaigh qualifies as an insured person under the terms of Ms. Giese's homeowner's policy. The policy defined those who are insured as follows:

> Insured means you and residents of your household who are:
> a.    Your relatives;
> b.    Other persons under the age of 21 and in the care of any person named above

Plaintiff takes the position that Tanner qualifies as an insured person because he was under 21 and in the care of Ms. Giese, his grandmother. Defendant takes the position that Tanner does not qualify as an insured person because he was not a resident of Ms. Giese's household.

In Illinois, the plaintiff in a declaratory judgment action bears the burden of proof. *Tepper v. County of Lake*, 598 N.E.2d 361 (Ill. App. 1992). Because an insurance policy is a contract, the terms and provisions are constructed as a matter of law. *Outboard Marine Corp. V. Liberty Mutual Insurance Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992). The law mandates liberal construction of

2

insurance policies in favor of coverage. *United States Fidelity & Guaranty Co v. Wilkin*, 578 N.E.2d 926, 930 (Ill. 1991).

The Illinois courts have been presented with numerous opportunities to interpret insurance policy clauses requiring a residence-sharing relationship between individuals. The phrase "resident of the household" has no fixed meaning but is not ambiguous. It requires a case-specific analysis, with a focus on intent – usually evidenced by the acts of the person whose residency is questioned – as well as physical presence and permanency of abode. *Farmers Auto Ins. Ass'n. v. Gitelson*, 801 N.E. 2d 1064, 1069 (Ill. App. 2003)(adult daughter who leased and used an apartment as her permanent address was not a resident of her parent's home).

Plaintiff concedes that Tanner was not a resident of Ms. Giese's home. While the testimony shows that the Giese and McVaigh households were separate, some evidence permits the inference that Ms. Giese performed some child care tasks for her grandchildren on an infrequent basis. For example, if asked, she would supervise her grandchildren for an evening or overnight. She also offered them refreshments and kept children's toys in her home. While she did not routinely supervise her grandchildren's activities, she did make an effort to correct known misbehavior. After Jared Carter was injured, she forbade Tanner from using his paint ball gun on her property. This evidence does not rationally permit an inference that Tanner was "in the care of" Ms. Giese in February, 2005.

IT IS ORDERED that plaintiff's motion for summary judgment (Doc. No. 41) is DENIED and defendant's motion for summary judgment (Doc. No. 42) is GRANTED. Tanner McVaigh is not an insured person under the homeowner's policy issued to Linda McVaigh. The defendant has no duty to defend or indemnify Tanner McVaigh.

**IT IS SO ORDERED.**

**DATED:   August 6, 2008   .**

                 *s/Philip M. Frazier*
                 **PHILIP M. FRAZIER**
                 **UNITED STATES MAGISTRATE JUDGE**